SEAN K. KENNEDY (145632)
Federal Public Defender
CRAIG WILKE (150728)
Deputy Federal Public Defender
Directing Attorney, Santa Ana Office
411 West Fourth Street, Suite 7110
Santa Ana, California 92701-4598
Telephone (714) 338-4500
Facsimile (714) 338-4520
Email craig_wilke@fd.org

Attorneys for Defendant
PAUL DWYER GRENNAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | NO. SA CR 05-39-DOC |
|---|---|
| Plaintiff, | **DEFENDANT'S POSITION RE: RESENTENCING ON REMAND** |
| v. | Sentencing Date: August 13, 2007 |
| PAUL DWYER GRENNAN, | Sentencing Time: 1:30 p.m. |
| Defendant. | |

Defendant Paul Dwyer Grennan, by and through his attorney of record, Deputy Federal Public Defender Craig Wilke, hereby files a memorandum setting forth his position regarding resentencing on remand.

Respectfully Submitted,

SEAN K. KENNEDY
Federal Public Defender

Dated: July 25, 2007          By  *Craig Wilke*
                                  CRAIG WILKE
                                  Deputy Federal Public Defender
                                  Directing Attorney, Santa Ana Office

## RESENTENCING MEMORANDUM

## I.

## INTRODUCTION

On November 14, 2005, the Court sentenced Defendant Paul Dwyer Grennan to sixty-four (64) months imprisonment followed by a five-year term of supervised release. On March 20, 2007, the United States Court of Appeals for the Ninth Circuit vacated conditions of supervised release which required Grennan to submit to a plethysmograph and Abel testing, and to take all prescribed medication.[1] *See United States v. Grennan*, No. 05-50932, 2007 WL 841093 (Mar. 20, 2007). The Ninth Circuit remanded the case back to this Court for resentencing. For the reasons discussed below, the Court should not require Grennan to submit to plethysmograph or Abel testing, and should not require him to take all prescribed medication as conditions of supervised release.

## II.

## ARGUMENT

**A. THE COURT SHOULD NOT REQUIRE GRENNAN TO SUBMIT TO PLETHYSMOGRAPH TESTING AS A CONDITION OF SUPERVISED RELEASE**

"'Penile plethysmograph testing is a procedure that involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by

---

[1] All three of these conditions were part of Condition 10 of the terms and conditions of supervised release as set forth in the judgment and commitment order, which provides as follows:

> The defendant shall participate in psychological/psychiatric counseling and/or a sex offender treatment program as approved and directed by the Probation Officer. The defendant shall abide by all rules, requirements, and conditions, of such program, including submission to risk assessment evaluation(s), and physiological testing, such as polygraphy, plethysmograph, and Abel testing, and shall take all prescribed medication[.]

Judgment & Probation/Commitment Order, at 2 (Nov. 14, 2005).

measuring minute changes in his erectile response." *United States v. Weber*, 451 F.3d 552, 554 (9th Cir. 2006) (citation omitted); *see also id*. at 562 (explaining testing in greater detail). Given the "exceptionally intrusive nature and duration" of plethysmograph testing which is conducted in settings of varying degrees of privacy, the Ninth Circuit has held that "the procedure implicates a particularly significant liberty interest." *Id*. at 563. Moreover, the accuracy and reliability of plethysmograph testing has been seriously questioned, due to its susceptibility to manipulation and lack of uniform administration and scoring, such that "[c]ourts have uniformly declared that the results of such tests are inadmissible . . . ." *Id*. at 564-65 & n.15 (citations omitted); *see also Doe v. Glanzer*, 232 F.3d 1258, 1266 (9th Cir. 2000) ("results of penile plethysmographs are inadmissible as evidence because there are no accepted standards for this test in the scientific community"); *United States v. Powers*, 59 F.3d 1460, 1471 (4th Cir. 1995) (recognizing that plethysmograph testing is not viewed by scientific community as valid diagnostic tool). For these reasons, the government must demonstrate that submission to plethysmograph testing involves no greater deprivation of liberty than is reasonably necessary to serve the goals of deterrence, protection of the public, and rehabilitation. *Weber*, 451 F.3d at 558-59.

Nothing about Grennan's characteristics or criminal background justify the intrusion into his "significant liberty interest in his own bodily integrity" that plethysmograph testing would involve. *Id*. at 567. Grennan will be over 70 years old by the time he is on supervised release. He has no prior criminal record. While he was convicted in this case of enticing a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b), the minor was a fully-mature, post-pubescent young woman with whom Grennan never had any physical contact and, given the circumstances of the offense wherein Grennan posed as an 18 year old young man while communicating with the victim, clearly never intended to have any physical contact. Grennan will already be subject to highly restrictive conditions on supervised release to protect the public which include prohibitions on contacting minors, using the

internet, registering as a sex offender, obtaining the Probation Office's approval of his residence and employment, and sex offender treatment which may include polygraph testing. Moreover, there are several far less intrusive alternatives to plethysmograph testing for the treatment of sex offenders, including self-reporting interviews, card-sorting tests, and polygraph testing. *Weber*, 451 F.3d at 567-68. For all of these reasons, requiring Grennan to submit to plethysmograph testing involves a greater deprivation of liberty than is reasonably necessary to serve the goals of deterrence, protection of the public, and rehabilitation. As such, the Court should not impose it as a condition of supervised release. *Id*. at 559.

**B.    THE COURT SHOULD NOT REQUIRE GRENNAN TO SUBMIT TO ABEL TESTING AS A CONDITION OF SUPERVISED RELEASE**

"Abel testing . . . involves exhibiting photographs to an individual and measuring the length of time he looks at each picture." *Weber*, 451 F.3d at 567 (citation omitted). Although less physically intrusive than plethysmograph testing, Abel testing, like plethysmograph testing, encompasses a mental intrusion by probing a person's "innermost thoughts." *Id*. at 562-63. Abel testing's validity is so dubious that court's have held that it does not meet the minimal standard of reliability for admission in federal court. *See United States v. White Horse*, 177 F. Supp. 2d 973, 975 (D.S.D. 2001) (Abel testing does not meet *Daubert* admissibility standards). Given Grennan's age, lack of prior record, lack of sexual interest in pre-pubescent minors, and the other highly-restrictive supervised release conditions, requiring him to submit to Abel testing as a condition of supervised release is not reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender. *See United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003) (Abel testing condition not warranted for offender with twenty year old kidnapping conviction which involved undressing and taking nude photographs of eight year old girl).
/
/

## C. THE COURT SHOULD NOT REQUIRE GRENNAN TO TAKE PRESCRIBED MEDICATION AS A CONDITION OF SUPERVISED RELEASE

The condition that Grennan take all prescribed medication "is impermissible because it admits of the possibility that Grennand could be required to take antipsychotic medication without the required medically grounded findings." *Grennan*, No. 05-50932, slip op., 2007 WL 84103 (citing *United States v. Williams*, 356 F.3d 1045, 1055-56 (9th Cir. 2004)). Accordingly, the Court should not impose this condition of supervised relase.

## III.
## CONCLUSION

For all the foregoing reasons, the Court should not require Grennan to submit to plethysmograph or Abel testing, or to take all prescribed medication as conditions of supervised release.

Respectfully Submitted,

SEAN K. KENNEDY
Federal Public Defender

Dated: July 25, 2007     By  *Craig Wilke*
CRAIG WILKE
Deputy Federal Public Defender
Directing Attorney, Santa Ana Office